**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TIMOTHY MUCHLER, | : | CIVIL NO. 3:15-CV-93 |
| | : | |
| Plaintiff, | : | (Judge Nealon) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| SMITH BAIL BONDS, LLC., et al., | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

This is a *pro se* civil action brought by Timothy Muchler, a state inmate who was formerly housed at the Luzerne County Prison. (Doc. 1.) According to Muchler's initial complaint, in November 2014 he participated in work release at the county prison and was employed by Smith Bail Bonds to do carpentry and renovation work in their offices. (Id.) Muchler alleged that the defendants contracted with him to have this work done, but then reneged upon this contract. (Id.) Muchler also stated that his former employer falsely alleged that he was using drugs while on work release in order to have this release revoked, and avoid payment of moneys owed to Muchler. (Id.) On the basis of these allegations, Muchler then sued Smith Bail Bonds for what he believed he was owed on this contract, $20,000, and also sought punitive damages in this breach of contract action totaling $100,000. (Id.)

Along with this complaint, the plaintiff filed a motion to proceed *in forma pauperis*. (Doc. 2.)  We granted Muchler leave to proceed *in forma pauperis* but as part of our legally-mandated duty to screen *pro se in forma pauperis* pleadings, we recommended that this complaint be dismissed, without prejudice to the filing of an amended complaint. (Doc. 6.)  While this recommendation was pending before the district court, Muchler filed a proposed amended complaint. (Doc. 8.)  That amended complaint continued to name Smith Bail Bonds as a defendant in a breach of contract action, but added the acting warden at the Luzerne County Prison, J. Allen Nesbitt, the deputy warden, James Larson, the work release coordinator, Lou Elmy, the prison treatment coordinator, Grace Franks, a correctional sergeant, Mike Rostowski, and a prison nurse, now identified as Thomas Czyzycki, as defendants. (Id.)

As to these newly named correctional defendants, the nature of Muchler's claims had changed significantly in this amended complaint.  Muchler's amended complaint against the prison officials now focused on what transpired at the prison after prison officials were notified that Muchler may have been using drugs. According to the amended complaint, upon his return to the prison on November 14, 2014, Muchler was required to provide a urine sample.  When that sample bore tell-take signs of alteration, since the temperature of the sample fell below Muchler's body temperature, nurse Thomas Czyzycki, wrote a misconduct report.  Muchler was then

detained for three days in a " dry cell", a cell without bathroom facilities,[1] until he had a hearing on this prison infraction on November 18, 2014. Muchler alleged that defendants Elmy, Franks, and Rostowski denied him due process at this disciplinary hearing conducted by prison staff relating to the allegations that he had been using drugs while on work release. In particular Muchler seems to complain that in the course of this disciplinary action he was given insufficient opportunity to provide a clean urine sample, after producing what seemed to be an adulterated sample for Nurse Czyzycki. Muchler also faulted the defendant nurse, Thomas Czyzycki, for writing this disciplinary citation. This disciplinary action, however, simply resulted in 15 days of disciplinary confinement and the revocation of Muchler's work release privileges, relatively modest sanctions. Finally, Muchler protested that the conditions of his brief three day confinement in a "dry cell" violated his constitutional rights. Thus, liberally construed, Muchler's amended complaint lodges disciplinary due process claims against these prison official, coupled with a conditions of confinement claim relating to his brief incarceration in a "dry cell".

The remaining defendants in this action have now moved to dismiss this amended complaint. (Doc. 61.) This motion is fully briefed by the parties and is,

[1]It is alleged, however, that while Muchler was denied bathroom facilities in this dry cell, a standard precaution to avoid inmate destruction of concealed or ingested contraband, he was provided with food and drink, albeit in quantities Muchler deemed insufficient.

therefore, ripe for resolution.  For the reasons set forth below, it is recommended that this motion to dismiss be granted.

## II.     Discussion

### A.     Motion to Dismiss–Standard of Review

The defendants have moved to dismiss this complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years.  Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff.  Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d

1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679.  According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.  Rather, in conducting a

review of the adequacy of complaint, the Supreme Court has advised trial courts that

they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth.  While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations.  When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than

mere legal labels and conclusions.  Rather, a complaint must recite factual allegations

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state
> a claim, district courts should conduct a two-part analysis.  First, the
> factual and legal elements of a claim should be separated.  The District
> Court must accept all of the complaint's well-pleaded facts as true, but
> may disregard any legal conclusions.  Second, a District Court must then
> determine whether the facts alleged in the complaint are sufficient to
> show that the plaintiff has a 'plausible claim for relief.'  In other words,
> a complaint must do more than allege the plaintiff's entitlement to relief.
> A complaint has to 'show' such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-

step analysis:  "First, the court must 'tak[e] note of the elements a plaintiff must plead

to state a claim.'  Iqbal, 129 S.Ct. at 1947.  Second, the court should identify

allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' <u>Id.</u> at 1950.  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' <u>Id.</u>" <u>Santiago v. Warminster Tp.</u>, 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

Judged against these legal guideposts, Muchler's various claims fail as a matter of law for the reasons discussed below.

### B.     Legal Standards Regarding Constitutional Claims in a Prison Discipline Setting

At the outset, Muchler seems to lodge due process claims against prison official arising out of a prison disciplinary proceeding.   In bringing constitutional claims against correctional staff arising out of prison disciplinary hearings, the plaintiff faces an exacting burden of proof.   It is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974).   The Supreme Court has, however, recognized a set of minimum procedural protections that must apply to prison disciplinary proceedings, including the right to:  (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety or correctional goals, to call witnesses and present documentary evidence as part of a defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Id. at 563-67.

Due process also requires that a prison disciplinary tribunal be sufficiently impartial. Meyers v Alldredge, 492 F.2d 296, 305-07 (3d Cir. 1974). The requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or

decision-making role, in the circumstances underlying the charge from sitting on the disciplinary committee." <u>Meyers</u>, 492 F.2d at 306.  In the past, inmates have often invited courts find violations of this due process right based upon general assertions of staff bias.  Yet, such requests, while frequently made, have rarely been embraced by the courts.  Instead, the courts have held that a "generalized critique" of staff impartiality is insufficient to demonstrate the degree of bias necessary to prove a due process violation.  <u>Lasko v. Holt</u>, 334 F. App'x 474 (3d Cir. 2009).  Furthermore, in the absence of a showing that the hearing officer was "personally or substantially involved in the circumstances underlying [the investigation of the] charge," <u>Greer v. Hogston</u>,  288 F.App'x. 797, 799 (3d Cir. 2008), courts generally decline to sustain due process challenges to disciplinary decisions on claims of staff bias.  <u>See</u> <u>Redding v. Holt</u>, 252 F.App'x 488 (3d Cir. 2007).

A prison disciplinary determination comports with due process if it is based on "some evidence."  <u>See</u> <u>Superintendent, Mass. Corr. Inst. v. Hill</u>, 472 U.S. 445, 454-56 (1985) ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board").  This standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence.  <u>See id.</u> at 455; <u>Thompson v. Owens</u>, 889 F.2d 500, 501-02 (3d Cir. 1989).  Therefore, it is

well settled that disciplinary decisions are entitled to considerable deference by a reviewing court and must be upheld whenever there is "some evidence" to support the decision. Hill, 472 U.S. at 457; Elkin v. Fauver, 969 F.2d 48 (3d Cir.1992); Thompson v. Owens, 889 F.2d 500 (3d Cir. 1989); Franco v. Kelly, 854 F.2d 584, 588 (2d Cir. 1988); Freeman v. Rideout, 808 F.2d 949, 955 (2d Cir. 1986).  Thus, in this setting the "function [of the court] is to determine whether there is some evidence which supports the decision of the [hearing officer]."  Freeman, 808 F.2d at 954.  As the Supreme Court has observed, the "some evidence" standard is a highly deferential standard of review and:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Hill, 472 U.S. at 455-456.

Provided that a prisoner is afforded these due process protections during the disciplinary hearing process, it is well-settled that a claim that a misconduct report was false, standing alone, does not state a valid cause of action.  As the United States Court of Appeals for the Third Circuit has aptly observed:  "[F]iling false disciplinary charges does not itself violate a prisoner's constitutional rights, so long as procedural due process protections were provided.  See e.g., Freeman v. Rideout, 808 F.2d 949,

952-53 (2d Cir.1986) (the filing of false charges does not constitute a claim under §

1983 so long as the inmate was granted a hearing and an opportunity to rebut the

charges); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir.1984)." Richardson v.

Sherrer, 344 F. App'x 755, 757-758 (3d Cir. 2007). See also Booth v. Pence, 141 F.

App'x 66 (3d Cir. 2005); Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002).

These principles also directly apply to inmate retaliation claims stemming from

prison disciplinary proceedings.  A prisoner claiming that prison officials have

retaliated against him for exercising his constitutional rights must prove the following

three elements:  (1) the conduct in which he engaged was constitutionally protected;

(2) he suffered adverse action at the hands of prison officials; and (3) his

constitutionally protected conduct was a substantial motivating factor in the

defendants' conduct.  Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002).  With

respect to the obligation to demonstrate that he suffered an adverse action, a plaintiff

must demonstrate that he suffered action that "was sufficient to deter a person of

ordinary firmness from exercising his rights." Allah v. Seiverling, 229 F.3d 220, 225

(3d Cir. 2000).  While filing false misconduct reports may constitute the type of action

that will, in certain cases, support a retaliation claim, Mitchell v. Horn, 318 F.3d 523,

530 (3d Cir. 2003), in a prison discipline context, an inmate's retaliation claim fails

whenever the defendant shows that there is "some evidence" to support the discipline

citation.  As the United States Court of Appeals for the Third Circuit has observed: "[an inmate's] retaliatory discipline claim fails [when] there is 'some evidence' supporting the guilty findings . . . . See Henderson v. Baird, 29 F.3d 464, 469 (8th Cir.1994) (stating that a finding of 'some evidence' to support a prison disciplinary determination 'checkmates' the prisoner's retaliation claim)." Nifas v. Beard, 374 F.App'x 241, 244  (3d Cir. 2010).

Further, to the extent that this matter entailed a finding which resulted in a brief 15-day period a disciplinary custody, the amended complaint stems from an erroneous legal premise, that a two-week placement in disciplinary segregation implicates a sufficient legal interest to trigger specific substantive due process protections.  In analyzing any due process claim, "the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000) (citing Fuentes v. Shevin, 407 U.S. 67 (1972)).  Once we determine that a property or liberty interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it. Id. (citing Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).  Protected liberty or property interests generally arise either from the Due Process Clause or from state-created statutory entitlement. See Board of Regents v. Roth, 408 U.S. 564, 575 (1972).  However, in the case of prison inmates,

[i]n <u>Sandin v. Conner</u>, the Supreme Court announced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by procedural due process guarantees. Although the Court acknowledged that liberty interests could arise from means other than the Due Process Clause itself, the Court concluded that state-created liberty interests could arise only when a prison's action imposed an '*atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life*.' . . . In finding that the prisoner's thirty-day confinement in disciplinary custody did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest, the Court considered the following two factors: 1) the amount of time the prisoner was placed into disciplinary segregation; and 2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed upon other inmates in solitary confinement.

<u>Shoats</u>, 213 F.3d at 143-44(citations omitted, emphasis added).

Applying these legal benchmarks, it has been held that disciplinary proceedings which simply result in sanctions of disciplinary segregation for six months or more do not impose atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life in similar situations, and, therefore, do not give rise to a substantive due process claims. <u>Smith v. Mensinger</u>, 293 F.3d 641, 654 (3d Cir. 2002)(7 months disciplinary confinement).

### C.   The Disciplinary Due Process Claims in Muchler's Amended Complaint Fail as a Matter of Law

Judged against these benchmarks, this latest iteration of Muchler's complaint fails as a matter of law.  Turning first to Muchler's prison discipline due process claims, these  claims fail as a matter of law for a series of reasons.

First, we note that the disciplinary snaction ultimately imposed here, 15 days of disciplinary confinement and revocation of work release privileges, simply does not impose the type of atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life which would trigger substantive due process protections.  Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002).  Therefore, this claim fails under any substantive due process analysis.

Furthermore, the well-pleaded allegations recited in this case reveal that there was some ample evidence supporting this disciplinary finding, an immutable fact which defeats any procedural due process claim in this setting.  Thus, it seems entirely undisputed that Muchler provided a suspicious urine sample which did not meet normal body temperature parameters, and then failed to produce a second, valid urine sample, at the time of his disciplinary hearing.  Taken together, these undisputed facts constitute some evidence that Muchler participated in a prison infraction.  See Jackson v. Sneizek, 342 F. App'x 833 (3d Cir. 2009)(rejecting due process challenge

to disciplinary citation based upon failure to provide urine sample).  The finding that some evidence exists to support this disciplinary citation defeats any procedural due process claims advanced by Muchler, and compels dismissal of those claims. Richardson v. Sherrer, 344 F. App'x 755, 757-758 (3d Cir. 2007).  See also Booth v. Pence, 141 F. App'x 66 (3d Cir. 2005); Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002).

Likewise, Muchler's claims against Nurse Czyzycki fail as a matter of law. Nurse Czyzycki simply reported receipt of a suspicious, potentially adulterated urine sample from Muchler.  Even if we assume that Muchler is correct in claiming that this report was erroneous, that allegation, standing alone, will not carry the day on any due process claim since it is well-established that: "[F]iling false disciplinary charges does not itself violate a prisoner's constitutional rights, so long as procedural due process protections were provided.  See e.g., Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir.1986) (the filing of false charges does not constitute a claim under § 1983 so long as the inmate was granted a hearing and an opportunity to rebut the charges); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir.1984)."  Richardson v. Sherrer, 344 F. App'x 755, 757-758 (3d Cir. 2007).

Thus, Muchler's prison discipline due process claims fail as a legal matter since the sanctions imposed here do implicate any substantive due process interests, and the

disciplinary process comported with the requirements of procedural due process in this institutional setting. Therefore, these claims should be dismissed.

### D.     Muchler's Eighth Amendement Claim Also Fails

Finally, Muchler alleges in his amended complaint that his brief confinement in a "dry cell" while he awaited disciplinary action violated his rights under the Eighth Amendment since the conditions of his confinement amounted to cruel and unusual punishment. This claim also fails as a matter of law.

"When an Eighth Amendment claim arises in the context of a challenge to conditions of confinement, we must determine if prison officials acted with 'deliberate indifference' to the inmate's health. Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The objective inquiry is whether the inmate was 'denied the minimal civilized measure of life's necessities.' Hudson, 503 U.S. at 9, 112 S.Ct. 995." Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir. 2000). In this setting, it is clear that:

> The Eighth Amendment prohibits punishments inconsistent with "evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958)). Conditions of prison confinement violate the Eighth Amendment only if they "deprive inmates of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)

Atkinson v. Taylor, 316 F.3d 257, 272 (3d Cir. 2003).

When courts have in the past considered specific conditions of confinement alleged by inmates under this Eighth Amendment standard, it is apparent that the complaints advanced by Muchler have been found not to "deprive inmates of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347(1981).  For example, courts have held that a brief interruption in water service to an inmate's cell does not, by itself, so deprive an inmate of "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347(1981), that it constitutes an violation of the Eighth Amendment.  Banks v. Mozingo, 423 F. App'x 123, 127-28 (3d Cir. 2011), citing Williams v.Delo, 49 F.3d 442, 444–47 (8th Cir.1995) (finding no Eighth Amendment violation where prisoner was placed in a strip cell without clothes, the water in the cell was turned off and the mattress removed, and prisoner's bedding, clothing, legal mail, and hygienic supplies were withheld).  Indeed, courts have expressly rejected Eighth Amendment claims like those made here, that brief confinement in a "dry cell" while prison officials attempted to determine whether an inmate has ingested contraband constitutes cruel and unusual punishment.  See Gilblom v. Gillipsie, 435 F. App'x 165, 167 (3d Cir. 2011). Therefore, Muchler's otherwise unadorned allegation that he was held in a "dry cell"

for three days with limited food and beverage service does to state a claim of constitutional dimension and should also be dismissed.

## III.   **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' motion to dismiss (Doc.61.), be GRANTED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 2d day of May 2016.

*__S/Martin C.  Carlson__*
Martin C. Carlson
United States Magistrate Judge