FILED SCRANTON MAY 26 2016 PER_____ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY MUCHLER : | |
|     Plaintiff : | |
| : | CIVIL NO. 3:15-CV-0093 |
| v. : | |
| : | (JUDGE NEALON) |
| SMITH BAIL BONDS, LLC, : | (MAGISTRATE JUDGE CARLSON) |
| ET AL., : | |
|     Defendants : | |

## MEMORANDUM

On January 15, 2015, Plaintiff, Timothy Muchler, an inmate currently confined at the State Correctional Institutional in Camp Hill, Pennsylvania, ("SCI-Camp Hill") filed a complaint pursuant to 42 U.S.C. § 1983 for events that occurred while he was housed in the Luzerne County Prison in Wilkes-Barre, Pennsylvania ("LCP"). (Doc. 1). On January 16, 2015, Magistrate Judge Carlson issued a first Report and Recommendation, recommending that Plaintiff's complaint be dismissed without prejudice with leave to amend. (Doc. 6). On February 10, 2015, Plaintiff filed a proposed amended complaint. (Doc. 8). On March 9, 2015, the Undersigned issued a Memorandum and Order, adopting Magistrate Judge Carlson's first Report and Recommendation, and directing Plaintiff to file a second amended complaint. (Docs. 13 and 14). On March 23, 2015, Plaintiff filed a motion to amend his complaint. (Doc. 16). On April 10,

2015, Magistrate Judge Carlson issued a second Report and Recommendation, recommending that this Court grant Plaintiff's motion to amend his complaint and dismiss Defendants Smith Bail Bonds, LLC, LCP Warden J. Allen Nesbitt, and Deputy Warden James Larson from the action. (Doc. 18). On May 22, 2015, this Court issued a Memorandum and Order adopting Magistrate Judge Carlson's Report and Recommendation. (Docs. 25 and 26).

On July 8, 2015, Plaintiff filed an amended complaint, which was then served on the remaining Defendants. (Docs. 31 and 32). On December 2, 2015, Defendants filed a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure and an accompanying brief in support. (Docs. 61 and 62). Plaintiff filed a brief in opposition on December 23, 2015. (Doc. 68). On May 2, 2016, Magistrate Judge Carlson issued a Report and Recommendation ("R&R") regarding Defendant's motion to dismiss. (Doc. 70).

Objections were due by May 19, 2016, but have not been filed. (Id.). For the reasons set forth below, the R&R will be adopted, Defendants' motion to dismiss will be granted, Plaintiff's amended complaint will be dismissed for failure to state a claim, and the case will be closed.

**Standard of Review**

When neither party objects to a magistrate judge's report and

recommendation, the district court is not statutorily required to review the report, under de novo or any other standard. Thomas v. Arn, 474 U.S. 140, 152 (1985); 28 U.S.C. § 636(b)(1)(C). Nevertheless, the Third Circuit Court of Appeals has held that it is better practice to afford some level of review to dispositive legal issues raised by the report. Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987), writ denied, 484 U.S. 837 (1987); Garcia v. I..N.S., 733 F. Supp. 1554, 1555 (M.D. Pa. 1990) (Kosik, J.) (stating "the district court need only review the record for plain error or manifest injustice"). In the absence of objections, review may properly be limited to ascertaining whether there is clear error that not only affects the rights of the plaintiff, but also seriously affects the integrity, fairness, or public reputation of judicial proceedings. Cruz v. Chater, 990 F. Supp. 375, 377 (M.D. Pa. 1998) (Vanaskie, J.). The district court may accept, reject, or modify, in whole or in part, the findings and recommendations contained in the report. 28 U.S.C. § 636(b)(1)(C); M.D. Pa. L.R. 72.3.

**Discussion**

In his original complaint, Plaintiff alleges that his Section 1983 rights were violated when Defendants Smith Bail Bonds, LLC, Mike Smith, and Courtney Smith reneged upon a contract that had been extended to Plaintiff while he was on work release and that they falsely accused him of using drugs on work release in

order to have his release revoked and avoid payment for work he performed. (Doc. 1). Magistrate Judge Carlson issued a first Report and Recommendation recommending that Plaintiff's complaint be dismissed without prejudice with leave to amend. (Doc. 6). Before the Undersigned adopted this Report and Recommendation, Plaintiff filed a proposed amended complaint. (Doc. 8). This amended complaint continued to name as Defendants Smith Bail Bonds, LLC, Mike Smith, and Courtney Smith, but also added claims against Defendants LCP Warden Nesbitt, LCP Deputy Warden James Larson, work release coordinator Lou Elmy, LCP Treatment Coordinator Grace Franks, LCP Corrections Sergeant Mike Rostowski, and LCP nurse Thomas C. (Doc. 8). He alleged these additional Defendants violated his Section 1983 rights in events that transpired after LCP was notified that Plaintiff may have been doing drugs while on work release. (Doc. 8). According to the allegations made in the proposed amended complaint, Defendant LCP Nurse Thomas C wrote a misconduct report because Plaintiff's urine sample indicated signs of alteration. (Doc. 8). Plaintiff alleges he was then detained for three (3) days in a cell without bathroom facilities and was provided with inadequate amounts of food and drink until his hearing on the drug allegations. (Doc. 8). He alleges that Defendants Elmy, Franks, and Rostowski denied him due process at the disciplinary hearing conducted by prison staff

relating to the drug use allegations. (Doc. 8). He did not allege any facts relating to Defendants Warden Nesbitt or Deputy Warden Larson. (Doc. 8).

Shortly after Plaintiff filed his proposed amended complaint, the Undersigned adopted the first Report and Recommendation, and issued an Order dismissing Plaintiff's complaint without prejudice with leave to amend his complaint. (Doc. 14). Plaintiff subsequently filed a motion to amend his proposed amended complaint, sought dismissal of Defendant Smith Bail Bonds, LLC, and reiterated his intention to pursue the claims raised against the LCP Defendants named in his proposed amended complaint. (Doc. 16).

Magistrate Judge Carlson then issued a second Report and Recommendation, in which he provided the factual and procedural background of the case and the applicable standard of review for the screening of in forma pauperis complaints, all of which are herein adopted. (Doc. 18, pp. 1-10). The Magistrate Judge concluded that Defendants Smith Bail Bonds, LLC, Warden Nesbitt, and Deputy Warden Larson should be dismissed from the action because: (1) Plaintiff requested that Defendant Smith Bail Bonds, LLC be dismissed from the action; and (2) Plaintiff failed to allege factual allegations that Defendants Warden Nesbitt and Deputy Warden Larson violated his Section 1983 rights, and these Defendants cannot be held liable under the theory of supervisory liability

because Plaintiff has not alleged facts that they actively deprived him of a right secured by the Constitution. (Doc. 18, pp. 10-14). Magistrate Judge Carlson also recommended that Plaintiff's motion to amend his proposed amended complaint be granted, and that this amended complaint be served on the remaining Defendants. (Id. at 14-18). On May 22, 2015, this Court adopted this second Report and Recommendation, dismissing Defendants Smith Bail Bonds, Warden Nesbitt, and Deputy Warden Larson and permitting Plaintiff to file another amended complaint. (Docs. 25 and 26).

In his amended complaint filed on July 8, 2015, Plaintiff continued to name several Defendants who had already been terminated from the action on May 22, 2015, including Smith Bail Bonds; Warden Nesbitt, and Deputy Warden Larson. (Docs. 25, 26 and 31). He also added new Defendants, including: Lou Elmy, the work release coordinator; Grace Franks, the prison treatment coordinator; Mike Rostowski, a correctional sergeant; and Thomas Czyzycki, a prison nurse. (Doc. 31). Against these newly named Defendants, Plaintiff's amended complaint alleges the following:

> Muchler's amended complaint against the prison officials now focused on what transpired at the prison after prison officials were notified that Muchler may have been using drugs. According to the amended complaint, upon his return to the prison on November 14, 2014, Muchler was required to

> provide a urine sample. When that sample bore telltale signs of alteration, since the temperature of the sample fell below Muchler's body temperature, nurse Thomas Czyzycki, wrote a misconduct report. Muchler was then detained for three days in a " dry cell," a cell without bathroom facilities,[1] until he had a hearing on this prison infraction on November 18, 2014. Muchler alleged that Defendants Elmy, Franks, and Rostowski denied him due process at this disciplinary hearing conducted by prison staff relating to the allegations that he had been using drugs while on work release. In particular, Muchler seems to complain that in the course of this disciplinary action he was given insufficient opportunity to provide a clean urine sample, after producing what seemed to be an adulterated sample for Nurse Czyzycki. Muchler also faulted the defendant nurse, Thomas Czyzycki, for writing this disciplinary citation. This disciplinary action, however, simply resulted in 15 days of disciplinary confinement and the revocation of Muchler's work release privileges,
> relatively modest sanctions. Finally, Muchler protested that the conditions of his brief three day confinement in a "dry cell" violated his constitutional rights. Thus, liberally construed, Muchler's amended complaint lodges disciplinary due process claims against these prison official, coupled with a conditions of confinement claim relating to his brief incarceration in a "dry cell."

(Doc. 70, pp. 2-3).

In response to this amended complaint, the remaining Defendants filed a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docs. 61 and 62). Magistrate Judge Carlson's R&R set forth the appropriate standard for a Rule 12(b)(6) motion to dismiss, which is herein adopted. (Id. at 4-7).

The R&R analyzes the motion to dismiss as follows:

> ### B. Legal Standards Regarding Constitutional Claims in a Prison Discipline Setting
>
> At the outset, [Plaintiff] seems to lodge due process claims against prison official arising out of a prison disciplinary proceeding. In bringing constitutional claims against correctional staff arising out of prison disciplinary hearings, the plaintiff faces an exacting burden of proof. It is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The Supreme Court has, however, recognized a set of minimum procedural protections that must apply to prison disciplinary proceedings, including the right to: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety or correctional goals, to call witnesses and present documentary evidence as part of a defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Id. at 563-67.
>
> Due process also requires that a prison disciplinary tribunal be sufficiently impartial. Meyers v Alldredge, 492 F.2d 296, 305-07 (3d Cir. 1974). The requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary committee." Meyers, 492 F.2d at 306. In the past, inmates have often invited courts find violations of this due process right based upon general assertions of staff bias. Yet, such requests, while frequently made, have rarely been embraced by the courts. Instead, the courts have held that a "generalized critique" of staff impartiality is insufficient to demonstrate the degree of bias necessary to prove a due process violation.

Lasko v. Holt, 334 F. App'x 474 (3d Cir. 2009). Furthermore, in the absence of a showing that the hearing officer was "personally or substantially involved in the circumstances underlying [the investigation of the] charge," Greer v. Hogston, 288 F.App'x. 797, 799 (3d Cir. 2008), courts generally decline to sustain due process challenges to disciplinary decisions on claims of staff bias. See Redding v. Holt, 252 F.App'x 488 (3d Cir. 2007).

A prison disciplinary determination comports with due process if it is based on "some evidence." See Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454-56 (1985) ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board"). This standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence. See id. at 455; Thompson v. Owens, 889 F.2d 500, 501-02 (3d Cir. 1989). Therefore, it is well settled that disciplinary decisions are entitled to considerable deference by a reviewing court and must be upheld whenever there is "some evidence" to support the decision. Hill, 472 U.S. at 457; Elkin v. Fauver, 969 F.2d 48 (3d Cir.1992); Thompson v. Owens, 889 F.2d 500 (3d Cir. 1989); Franco v. Kelly, 854 F.2d 584, 588 (2d Cir. 1988); Freeman v. Rideout, 808 F.2d 949, 955 (2d Cir. 1986). Thus, in this setting the "function [of the court] is to determine whether there is some evidence which supports the decision of the [hearing officer]." Freeman, 808 F.2d at 954. As the Supreme Court has observed, the "some evidence" standard is a highly deferential standard of review and:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the

> conclusion reached by the disciplinary board.

Hill, 472 U.S. at 455-456.

Provided that a prisoner is afforded these due process protections during the disciplinary hearing process, it is well-settled that a claim that a misconduct report was false, standing alone, does not state a valid cause of action. As the United States Court of Appeals for the Third Circuit has aptly observed: "[F]iling false disciplinary charges does not itself violate a prisoner's constitutional rights, so long as procedural due process protections were provided. See e.g., Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir.1986) (the filing of false charges does not constitute a claim under § 1983 so long as the inmate was granted a hearing and an opportunity to rebut the charges); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir.1984)." Richardson v. Sherrer, 344 F. App'x 755, 757-758 (3d Cir. 2007). See also Booth v. Pence, 141 F. App'x 66 (3d Cir. 2005); Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002).

These principles also directly apply to inmate retaliation claims stemming from prison disciplinary proceedings. A prisoner claiming that prison officials have retaliated against him for exercising his constitutional rights must prove the following three elements: (1) the conduct in which he engaged was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct. Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002). With respect to the obligation to demonstrate that he suffered an adverse action, a plaintiff must demonstrate that he suffered action that "was sufficient to deter a person of ordinary firmness from exercising his rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000). While filing false misconduct reports may constitute the type of action that will, in certain cases, support a retaliation claim, Mitchell v. Horn, 318 F.3d

523, 530 (3d Cir. 2003), in a prison discipline context, an inmate's retaliation claim fails whenever the defendant shows that there is "some evidence" to support the discipline citation. As the United States Court of Appeals for the Third Circuit has observed: "[an inmate's] retaliatory discipline claim fails [when] there is 'some evidence' supporting the guilty findings . . . . See Henderson v. Baird, 29 F.3d 464, 469 (8th Cir.1994) (stating that a finding of 'some evidence' to support a prison disciplinary determination 'checkmates' the prisoner's retaliation claim)." Nifas v. Beard, 374 F.App'x 241, 244 (3d Cir. 2010).

Further, to the extent that this matter entailed a finding which resulted in a brief 15-day period a disciplinary custody, the amended complaint stems from an erroneous legal premise, that a two-week placement in disciplinary segregation implicates a sufficient legal interest to trigger specific substantive due process protections. In analyzing any due process claim, "the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000) (citing Fuentes v. Shevin, 407 U.S. 67 (1972)). Once we determine that a property or liberty interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it. Id. (citing Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). Protected liberty or property interests generally arise either from the Due Process Clause or from state-created statutory entitlement. See Board of Regents v. Roth, 408 U.S. 564, 575 (1972). However, in the case of prison inmates,

> [i]n Sandin v. Conner, the Supreme Court announced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by procedural due process guarantees. Although the Court acknowledged that liberty interests could arise

11

> from means other than the Due Process Clause itself, the Court concluded that state-created liberty interests could arise only when a prison's action imposed an '*atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.*' . . . In finding that the prisoner's thirty-day confinement in disciplinary custody did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest, the Court considered the following two factors: 1) the amount of time the prisoner was placed into disciplinary segregation; and 2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed upon other inmates in solitary confinement.

Shoats, 213 F.3d at 143-44(citations omitted, emphasis added).

Applying these legal benchmarks, it has been held that disciplinary proceedings which simply result in sanctions of disciplinary segregation for six months or more do not impose atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life in similar situations, and, therefore, do not give rise to a substantive due process claims. Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002)(7 months disciplinary confinement).

### C. **The Disciplinary Due Process Claims in [Plaintiff]'s Amended Complaint Fail as a Matter of Law**
Judged against these benchmarks, this latest iteration of [Plaintiff]'s complaint fails as a matter of law. Turning first to [Plaintiff]'s prison discipline due process claims, these claims fail as a matter of law for a series of reasons.

First, we note that the disciplinary sanction ultimately imposed

here, 15 days of disciplinary confinement and revocation of work release privileges, simply does not impose the type of atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life which would trigger substantive due process protections. Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002). Therefore, this claim fails under any substantive due process analysis.

Furthermore, the well-pleaded allegations recited in this case reveal that there was some ample evidence supporting this disciplinary finding, an immutable fact which defeats any procedural due process claim in this setting. Thus, it seems entirely undisputed that [Plaintiff] provided a suspicious urine sample which did not meet normal body temperature parameters, and then failed to produce a second, valid urine sample, at the time of his disciplinary hearing. Taken together, these undisputed facts constitute some evidence that [Plaintiff] participated in a prison infraction. See Jackson v. Sneizek, 342 F. App'x 833 (3d Cir. 2009)(rejecting due process challenge to disciplinary citation based upon failure to provide urine sample). The finding that some evidence exists to support this disciplinary citation defeats any procedural due process claims advanced by [Plaintiff], and compels dismissal of those claims. Richardson v. Sherrer, 344 F. App'x 755, 757-758 (3d Cir. 2007). See also Booth v. Pence, 141 F. App'x 66 (3d Cir. 2005); Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002).

Likewise, [Plaintiff]'s claims against Nurse Czyzycki fail as a matter of law. Nurse Czyzycki simply reported receipt of a suspicious, potentially adulterated urine sample from [Plaintiff]. Even if we assume that [Plaintiff] is correct in claiming that this report was erroneous, that allegation, standing alone, will not carry the day on any due process claim since it is well-established that: "[F]iling false disciplinary charges does not itself violate a prisoner's constitutional rights, so long as procedural due process protections were provided.

See e.g., Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir.1986) (the filing of false charges does not constitute a claim under § 1983 so long as the inmate was granted a hearing and an opportunity to rebut the charges); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir.1984)." Richardson v. Sherrer, 344 F. App'x 755, 757-758 (3d Cir. 2007).

Thus, [Plaintiff]'s prison discipline due process claims fail as a legal matter since the sanctions imposed here do implicate any substantive due process interests, and the disciplinary process comported with the requirements of procedural due process in this institutional setting. Therefore, these claims should be dismissed.

### D. [Plaintiff]'s Eighth Amendment Claim Also Fails

Finally, [Plaintiff] alleges in his amended complaint that his brief confinement in a "dry cell" while he awaited disciplinary action violated his rights under the Eighth Amendment since the conditions of his confinement amounted to cruel and unusual punishment. This claim also fails as a matter of law.

"When an Eighth Amendment claim arises in the context of a challenge to conditions of confinement, we must determine if prison officials acted with 'deliberate indifference' to the inmate's health. Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The objective inquiry is whether the inmate was 'denied the minimal civilized measure of life's necessities.' Hudson, 503 U.S. at 9, 112 S.Ct. 995." Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir. 2000). In this setting, it is clear that:

> The Eighth Amendment prohibits punishments inconsistent with "evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting Trop v. Dulles,

> 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958)). Conditions of prison confinement violate the Eighth Amendment only if they "deprive inmates of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)
>
> Atkinson v. Taylor, 316 F.3d 257, 272 (3d Cir. 2003).
>
> When courts have in the past considered specific conditions of confinement alleged by inmates under this Eighth Amendment standard, it is apparent that the complaints advanced by [Plaintiff] have been found not to "deprive inmates of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347(1981). For example, courts have held that a brief interruption in water service to an inmate's cell does not, by itself, so deprive an inmate of "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347(1981), that it constitutes an violation of the Eighth Amendment. Banks v. Mozingo, 423 F. App'x 123, 127-28 (3d Cir. 2011), citing Williams v.Delo, 49 F.3d 442, 444–47 (8th Cir.1995) (finding no Eighth Amendment violation where prisoner was placed in a strip cell without clothes, the water in the cell was turned off and the mattress removed, and prisoner's bedding, clothing, legal mail, and hygienic supplies were withheld). Indeed, courts have expressly rejected Eighth Amendment claims like those made here, that brief confinement in a "dry cell" while prison officials attempted to determine whether an inmate has ingested contraband constitutes cruel and unusual punishment. See Gilblom v. Gillipsie, 435 F. App'x 165, 167 (3d Cir. 2011). Therefore, [Plaintiff]'s otherwise unadorned allegation that he was held in a "dry cell" for three days with limited food and beverage service does to state a claim of constitutional dimension and should also be dismissed.

(Doc. 70, pp. 8-18).

It is noted that objections to the R&R have not been filed. After review, and in the absence of objections, because there is no clear error with Magistrate Judge Carlson's R&R, the aforementioned analysis and conclusions from the R&R will be adopted as such. Thus, Magistrate Judge Carlson's R&R will be adopted, Defendants' motion to dismiss the complaint, (Doc. 61), will be granted, Plaintiff's amended complaint, (Doc. 31), will be dismissed with prejudice for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procecure, and the Clerk of Court will be directed to close this case.

A separate Order will be issued.

**Date:** May 25, 2016

/s/ William J. Nealon
**United States District Judge**